**A. H. BULL STEAMSHIP CO., Plaintiff,**

v.

**SEAFARERS' INTERNATIONAL UN-ION OF NORTH AMERICA, Atlantic and Gulf District, AFL–CIO, Defendant.**

Civ. No. 18007.

United States District Court
E. D. New York.

Sept. 27, 1957.

Satterlee, Browne & Cherbonnier and Donovan, Leisure, Newton & Irvine, New York City, James V. Hayes, A. V. Cherbonnier, Sidney P. Howell, Jr., New York City, Helmut J. F. Furth, New York City, of counsel, for plaintiff.

Seymour W. Miller, Brooklyn, N. Y., for defendant.

BRUCHHAUSEN, District Judge.

The plaintiff, an operator of ships engaged in the transportation business, instituted this action against the defendant, Labor Union, for specific performance of a collective bargaining agreement, entered into between the parties and for other relief. The subject motion is for provisional remedies, enforcing the agreement, pendente lite.

The facts, not in dispute, in substance, are as follows:

1. That the parties entered into a collective bargaining agreement in October 1956, which will not expire by its terms until September 30, 1958.

2. That the agreement and predecessor agreements contain a provision that there shall be no strikes, lockouts or stoppages of work while the provisions of the agreement are in effect.

3. That the defendant shall furnish to the plaintiff capable and competent personnel in ample time to prevent any delay in the scheduled departure of its vessels.

4. That on August 19, 1957, the defendant called a strike against the plaintiff and that the strike has been in existence ever since.

On June 17, 1957, the defendant served upon the plaintiff a notice to open negotiations for a revision of wages and other monetary matters and negotiations were had, which were unsuccessful.

The plaintiff contends that the defendant entered into the negotiations in bad faith and that its motive was to use them to further its attack on American Coal Shipping Inc., which has taken over stock control of the plaintiff. That claim has no particular relevance at this time.

The said collective bargaining agreement fails to clothe the defendant with the right to strike or to breach the agreement for any of the reasons advanced by the plaintiff. The only reference therein to the opening of negotiations for changes in the agreement is that they may be discussed but no right was thereby conferred upon either party to terminate the agreement on that account. The provision so referred to is that "applications by either party to open negotiations for changes in the wage scale or any monetary matters any time during the life of this agreement shall not be deemed cause for termination of this agreement."

The work stoppages have caused and are causing serious loss, damage and irreparable injury to the plaintiff for which it has no adequate legal remedy.

The principal question herein pertains to the interpretation of certain provisions of the 1932 Norris-LaGuardia Act and of the later act, the Labor Management Relations Act of 1947. The Norris-LaGuardia Act of 1932, (29 U.S.C.A. § 101 et seq.) particularly Section 104 thereof, sets forth in substance that no

federal court shall issue any order restraining a person or persons, involved in a labor dispute, from ceasing or refusing to perform any work, whereas Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 185) conferred jurisdiction upon the federal courts in suits for violation of contracts between an employer and a labor organization engaged in interstate commerce, regardless of the amount in controversy or the citizenship of the parties.

It will be recalled that in 1932, during the depth of the economic depression, collective bargaining in the labor field was practically non-existent. The legislative policy, proclaimed in Section 102 of the 1932 Norris-LaGuardia Act was that workers should be unhampered in organizing. It was stated therein that "the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment."

■ The said 1932 Act was aimed at correcting "existing abuses of the injunctive remedy in labor disputes. Federal courts had been drawn into the field under the guise either of enforcing federal statutes, principally the Sherman Act, or through diversity of citizenship jurisdiction." Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co., 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622.

The aforementioned Section 104 of the Norris-LaGuardia Act thus removed jurisdiction that the federal courts possessed, though by circuitous route. Employers, hampered by local law, would work their way into federal courts, before the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and obtain favorable jurisdiction in labor disputes, resulting in strike injunctions.

Section 301 of the Labor Management Relations Act of 1947 vested federal courts with jurisdiction to impose certain responsibility upon labor unions which had not theretofore prevailed. The significant element of Section 301 of the

said Act was not that unions had the right to resort to the federal courts, since they could always have done so, if the other jurisdictional requirements were met, just as employers were entitled to do, within the limitations of the 1932 Act, but that in cases involving labor contracts, the federal courts by Section 301 were accorded complete jurisdiction, regardless of the amount involved, or of other jurisdictional requirements, and that in order to make labor unions amenable to such jurisdiction, they could be sued as an entity and money judgments could be enforced against their assets, though not against the assets of the individual members.

The 1932 Norris-LaGuardia Act circumscribed federal jurisdiction, only after other jurisdictional requirements, such as diversity, or amount involved etc. were met. On the other hand, the Labor Management Relations Act of 1947 conferred such jurisdiction.

In situations not involving labor contracts, such as collective bargaining agreements, employers are governed by local law as well as by the Norris-LaGuardia Act. However, by the enactment of the Labor Management Relations Act of 1947 and particularly Section 301 the Congress extended the jurisdiction of the federal courts, without reservation, to labor contract disputes whereas in the earlier 1932 Act, it limited such jurisdiction, as stated in Section 104, despite compliance with the other jurisdictional requirements. The said Section 104 constituted a complete restriction, not only as to labor contract controversies but also as to numerous other labor suits instituted in the federal courts.

■ In the interest of industrial peace, the federal courts under the 1947 Act were given jurisdiction of labor contracts without reservation or denial of any of their other inherent or traditional powers, legal or equitable. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972.

Labor was not thereby stripped of its primary weapon without the substitution of any reasonable alternative. Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., supra.

That the primary objective of the 1932 Norris-LaGuardia Act was to aid workers in their efforts to organize and enter into collective bargaining agreements, rather than the consideration of the rights and remedies of the parties thereunder, subsequent to the execution of such agreement, is emphasized in the latter mentioned case, wherein the Court said:

> "The Norris-LaGuardia Act, on the other hand, was designed primarily to protect working men in the exercise of organized, economic power, which is vital to collective bargaining."

■ A principal purpose of the more recent Act, the Labor Management Relations Act, 1947, not contemplated by the Norris-LaGuardia Act, was the enforcement of collective bargaining agreements. It provides that "suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States * * *." Section 301 (a).

In the recent case of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 916, 1 L.Ed.2d 972, the plaintiff Union invoked the jurisdiction of the federal court under said Section 301 (also referred to as 29 U.S.C.A. § 185) to compel the defendant, the employer, to submit to arbitration, as provided for by the terms of the collective bargaining agreement, entered into between the parties. The agreement also contained a no-strike clause, similar to the one in the case at bar. The Court, in its opinion, quoted from the Senate and House Reports, which preceded the enactment of the statute. It appears in both reports that the primary concern was that unions and employers should both be bound to collective bargaining contracts and be governed by "the usual processes of the law."

The intent and purpose of the proposed legislation, reported by the Senate, quoted in the opinion in the Textile Workers case, in substance, is as follows:

1. That the chief advantage which an employer can reasonably expect from a collective labor agreement is the assurance of uninterrupted operation during the term of the agreement.

2. That without some effective method of assuring freedom from economic warfare for the term of the agreement there is little reason why an employer would desire to sign such a contract.

3. That to encourage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the federal courts.

4. That Section 185 in the proposed law provides for suits by and against unions as legal entities.

It will be noted that the Senate Committee, so reporting, did not limit faithful performance to any particular breach or to any particular party, committing the breach. It clearly meant to insure faithful performance of the entire agreement to the end that there should be industrial peace. There could be no such assurance if either party, at will, might breach the contract by refusal to perform, and there be no adequate enforcement procedure. Nonperformance, without the remedy of enforcement, would completely set at nought the object of the statute, as so stated, and render the legislation practically impotent.

The Court in the Lincoln Mills case, supra, in analysis of the said House and Senate Reports, wrote:

> "Thus collective bargaining contracts were made 'equally binding and enforceable on both parties.' Id., p. 15. As stated in the House Report, supra, p. 6, the new provision 'makes labor organizations equally responsible with employers for contract violation and provides for suit by either

against the other in the United States district courts.' To repeat, the Senate Report, supra, p.. 17, summed up the philosophy of § 301 as follows: 'Statutory recognition of the collective agreement as a valid, binding, and enforceable contract is a logical and necessary step. It will promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace.'"

In the Lincoln Mills case, supra, the Court further said:

"Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way. * * *

"Though a literal reading (of provisions of the Norris-LaGuardia Act) might bring the dispute within the terms of the Act (see Cox, Grievance Arbitration in the Federal Courts, 67 Harv.L.Rev. 591, 602–604), we see no justification in policy for restricting § 301(a) to damage suits, leaving specific performance of a contract to arbitrate grievance disputes to the inapposite procedural requirements of that Act. Moreover, we held in Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, and in Graham v. Brotherhood of Firemen, 338 U.S. 232, 237, 70 S.Ct. 14, 17, 94 L.Ed. 22, that the Norris-LaGuardia Act does not deprive federal courts of jurisdiction to compel compliance with the mandates of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The mandates there involved concerned racial discrimination. Yet those decisions were not based on any peculiarities of the Railway Labor Act. We followed the same course in Syres v. Oil Workers International Union, 350 U. S. 892, 76 S.Ct. 152, 100 L.Ed. 785, which was governed by the National Labor Relations Act. 29 U.S.C.A. § 151 et seq. There an injunction was sought against racial discrimination in application of a collective bargaining agreement; and we allowed the injunction to issue. The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuardia Act."

It is plain that the statute empowers this Court to invoke the remedy of specific performance, also that the undisputed facts presented warrant such procedure. That remedy embraces affirmative as well as negative acts. Kulukundis Shipping Co., S/A v. Amtorg Trading Corporation, 2 Cir., 126 F.2d 978.

The plaintiff's motion is granted. The defendant's cross motion is denied. Settle order on two days' notice at which time the parties may submit their proposals as to security and preference of the trial.