### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### Walter E. HEYMAN, d/b/a Stanwood Thriftmart, Respondent.

### No. 75–1958.

United States Court of Appeals, Ninth Circuit.

July 21, 1976.

Before WALLACE and KENNEDY, Circuit Judges, and BOHANON,* District Judge.

BOHANON, District Judge:

The National Labor Relations Board seeks enforcement of its order,[1] the Board having found Thriftmart to have engaged in unfair labor practices prohibited by § 8(a)(5) of the National Labor Relations Act, as amended.[2] There are no factual disputes, credibility resolutions or other such matters involved in the instant application. The crux of the matter is what effect the Board must give a United States District Court judgment which is antithetical to the Board's subsequent determination regarding the validity of a collective bargaining agreement. The continued existence of a contract previously rescinded by the court was a premise of the Board's findings. The factual context in which the issue arises is as follows:

On July 1, 1971, Teamsters Local 38 and Allied Employers, Inc. signed a collective bargaining agreement which encompassed Allied's grocery stores and concessions in King and Snohomish Counties of the State of Washington, another signatory to the contract being the respondent Thriftmart. Article I of the agreement executed between Allied and the Union declared that employers authorizing Allied to represent them would continue to be bound by the agreement even though such employer might subsequently withdraw its authorization to Allied. The agreement by its terms was to be in force until June 30, 1974. Teamsters Local 38 was to be the exclusive bargaining agent. No difficulties were initially encountered.

On August 22, 1973, however, Thriftmart filed suit against Teamsters Local 38 in the United States District Court for the Western District of Washington. The action was brought pursuant to § 301 of the La-

Paul J. Spielberg, Atty. (argued) of The National Labor Relations Board, Washington, D.C. for petitioner.

Eugene R. Nielson, of Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson, Tacoma, Wash. (no appearance), and Russell Reid, of Seattle, Wash. (no appearance), for respondent.

* The Honorable Luther Bohanon, Senior United States District Judge for the Northern, Western and Eastern Districts of Oklahoma, sitting by designation.

1. The Board's decision and order are reported at 216 NLRB No. 154.

2. 49 Stat. 452, 61 Stat. 140, 65 Stat. 601, 73 Stat. 525; 29 U.S.C.A. § 158.

bor-Management Relations Act[3] and the district court subsequently granted summary judgment for Thriftmart and rescinded the collective bargaining agreement.

In its Order granting summary judgment, the court concluded: (1) that the Union did not represent a majority of Thriftmart's employees at the time the agreement was signed; (2) that the Superior Court of the State of Washington, in *Trust Fund Services v. Heyman,* Case No. 116367, had previously declared as a conclusion of law that there was no prior collective bargaining agreement under which Heyman was bound; and (3) that because there was no prior collective bargaining agreement, there was no legal presumption that the Local represented a majority of workers employed by Heyman d/b/a Thriftmart at the execution date of the July, 1971, collective bargaining agreement.[4] Thus the Union's attempts to avoid the merits of the majority representation issue, through use of a dual presumption, were met by the district court Order that the Union was ". . . not entitled to the argued dual presumption of majority as found in the cited case of *Tragniew, Inc.,* 185 NLRB 962 . . ." (1971), *enforcement denied in part,* 470 F.2d 669 (C.A. 9 1972), the district court holding that *Trust Fund Services* established that there had been no prior agreement and hence making the presumption inapplicable by reason of the doctrine of collateral estoppel.

The Union had also sought to avoid rescission by asserting § 10(b)[5] and *Local Lodge No. 1424, International Ass'n. of Machinists v. NLRB,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) as a defense, arguing that Thriftmart's action was precluded by 10(b)'s six-month statute of limitations. Teamsters Local 38 did not appeal the Order granting summary judgment.

During the pendency of that suit in the United States District Court, Western District of Washington, Thriftmart repudiated the agreement, ceased payments to the Union's welfare and pension trusts, and refused to negotiate, having withdrawn its recognition of the Union. Thriftmart subsequently sought an election, which the Board denied.

The Union then filed the unfair labor practices charges which have led to the Board's application to this Court, as the Board found that the charges made, of repudiation and refusal to negotiate, were substantiated.

In finding unfair practices, the Board declared that a contract, lawful on its face, raises a presumption that the contracting Union was the majority representative at the time the contract was executed, citing *Shamrock Dairy, Inc.,* 119 NLRB 998 (1957), *aff'd. and enforced, sub nom. Teamsters v. NLRB,* 108 U.S.App.D.C. 117, 280 F.2d 665 (1960), *cert. denied,* 364 U.S. 892, 81 S.Ct. 224, 5 L.Ed.2d 188 (1960).[6] The Board fur-

---

**3.** 61 Stat. 156, 29 U.S.C.A. § 185. Part (a) of § 185 declares: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ."

**4.** The presumption here is: first, that the Union did represent a majority of the employees at the time the contract was signed; and second, that the Union continued to represent a majority of the employees throughout the life of the collective bargaining agreement. Thus, the fact-finder may presume that the contract was and is valid by virtue of the fact that the parties at least initially abided by the contract.

**5.** 49 Stat. 453, 49 Stat. 1921, 61 Stat. 146, 62 Stat. 991, 63 Stat. 107, 72 Stat. 945, 73 Stat.

544; 29 U.S.C.A. § 160. Quoting in relevant part:

"*Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ."

**6.** *Shamrock Dairy* was before the NLRB twice, reported at 124 NLRB 494 on the second occasion. An examination of the two decisions indicates that the instant presumption stems from one of a garden variety. That is, because it is illegal to grant exclusive recognition to a minority union, *NLRB v. Pennsylvania Greyhound Lines,* 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831 (1938), the Board will not presume such illegal conduct. It is noteworthy that in the second decision the Board declared, "*By virtue of the existence of the contract,* the Union was entitled to exclusive recognition for at

ther held that § 10(b) precluded, by time-limitation, rebuttal of the presumption by showing that the Union did not represent a majority of the employees at the time of the execution of the agreement. It was held by the Board that because Thriftmart initially recognized the Union as the exclusive bargaining agent, it could not defend by attacking its initial recognition which occurred more than six months prior to the filing of the unfair practices charges. The Board distinguished *Tragniew, supra,* which stated that a presumption of majority status could be rebutted by substantial evidence not precluded by § 10(b).[7] It was declared in the Board's decision:

"... only the Board, initially, has the jurisdiction to make that determination[5] [whether Thriftmart's conduct was unlawful under § 8(a)(5) of the Act].

\* \* \* \* \* \*

[5] We also note that the courts have recognized that once the Board has made a determination on the merits of an issue within its jurisdiction, that determination will stand independently of Sec. 301. *New Orleans Typographical Union No. 17 v. N.L.R.B.,* 368 F.2d 755 (C.A. 5, 1966)."

It is apparent that the Board sought to avoid a direct contradiction of the court order.

In certain factual settings, such as those encountered in *New Orleans, supra,* a Board determination may take precedence over other proceedings. Our concern, however, is with the Board holdings relative to the existence of the contract, as the contract underlies these findings of unlawful conduct. This presents a different question: What consideration must the Board give to the judgment of rescission?

■ We are of the opinion that the jurisdictional grant within § 301 carries with it both the powers necessary to enforce judgments and to give judgments effect in such quasi-judicial forums as the NLRB, through the application of such doctrines as res judi-

cata or collateral estoppel, *Independent Petroleum Workers of America v. American Oil Co.,* 324 F.2d 903 (C.A. 7 1963), aff'd. 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964); *Mine Workers Locals 15, 17, 107, 108 & 111 v. Eagle-Picher Mining & Smelting Co.,* 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945) (res judicata); *Boeing Airplane Co. v. Aeronautical Indus. Dist. Lodge No. 751, of Intern. Ass'n. of Machinists,* 91 F.Supp. 596 (N.D.Wash.1950), aff'd. 188 F.2d 356 (C.A. 9 1951), cert. denied, 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621 (1951) (rescission); *Smith v. Evening News Ass'n.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Teamsters Local 25, AFL v. W. L. Mead,* 230 F.2d 576 (C.A. 1 1956), cert. dismissed, 352 U.S. 802, 77 S.Ct. 21, 1 L.Ed.2d 37 (1956) (courts formulate and apply rules); *A. H. Bull Steamship Co. v. Seafarers' Intern. Union of North America, AFL–CIO,* 155 F.Supp. 739 (E.D.N.Y.1957), citing *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (federal court jurisdiction without reservation of traditional powers).

■ Although the authority of the Board to deal with an unfair labor practice which also violates a collective bargaining agreement is not displaced by § 301, the Board's authority does not supplant the jurisdiction of the courts, *Amalgamated Ass'n. of Street, Elec. Railway & Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 297, 300, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Smith v. Evening News, supra.* An implicit collateral attack, launched through the filing of charges premised on the contract, may not be entertained by the Board under the guise of different policy considerations, *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 375–377, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Swift & Co. v. United States,* 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928); *Higginson v. Schoeneman,* 89 U.S.App.D.C. 126,

least the term of the contract. . . ." at 496 (emphasis ours)

**7.** As was indicated by the U.S. District Court, *Tragniew* is at least factually different as it

arose in the context of the presumption's operation relative to a prior, expired agreement and a current agreement.

190 F.2d 32 (1951); 49 CJS Judgments § 401; *cf. Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

 It is as well a basic principle that contracts rescinded by the courts are subsequently treated as nullities, 17 Am.Jur.2d Contracts, § 516 and to argue the violation to have occurred prior to the judgment of the district court is mere sophism; the Board cannot breathe new life into that which has expired by judicial decree.

When a judgment is pleaded in another jurisdiction, the question is whether the judgment is res judicata, and where the judgment determines a right under federal statute, " . . . that decision is 'final until reversed in an appellate court, or modified or set aside in the court of its rendition.' " *Stoll v. Gottlieb,* 305 U.S. 165, 170, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938). The Board was faced with the same parties; essentially the same contract issue, albeit implicitly, that existed in the district court; the same Union arguments; and the presence of a judicially decreed rescission. To fail to give any effect to the district court's judgment would here render § 301 nugatory and defeat the intentions of Congress that alternative forums be available [8] and that contract violations be left "to the usual processes of the law," *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 513, 82 S.Ct. 519, 526, 7 L.Ed.2d 483 (1962). Were the Board to have found unfair labor practices extrinsic to the collective bargaining agreement, such an effect would not occur, and the Board would properly be operating solely within its own jurisdictional authority.

 The Board's authority, however, does not extend in the first instance to contract litigation, nor does the Board itself have requisite jurisdiction, as would a court of appeals, to waive a judicial doctrine such as res judicata, *cf. New Orleans Typographical Union No. 17 v. N.L.R.B.,* 368 F.2d 755 (C.A. 5 1966); *cf. Denver Bldg. & Const. Trades Council v. N.L.R.B.,* 87 U.S.App.D.C. 293, 186 F.2d 326 (1950). As was stated in *Stoll, supra* :

"A court does not have the power, by . . . fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators.

• • •

. . . It is just as important that there should be a place to end as that there should be a place to begin litigation."

The Board does not have the power to extend its jurisdiction, nor has the Board been afforded the powers commensurate with a complete exercise of the plenary power of Congress, *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954).

There is no dispute as to the jurisdiction of the Board nor the propriety of some presumption being utilized, *see NLRB v. Fansteel Metallurgical Corp.,* 306 U.S. 240, 244, 59 S.Ct. 490, 83 L.Ed. 627 (1939). As to the Board's argument that 10(b) precludes consideration of the majority representation question, the analysis in *Local Lodge, supra,* 362 U.S. at 416, 80 S.Ct. 822 is inapposite on these facts and issues. Majority representation is not the issue in this case; but what was and is the issue is the effect of the district court rescission on the presumption of validity utilized by the Board. *Local Lodge* described two situations.[9] Regard-

---

8. " . . . By retaining the language which provides the Board's power under section 10 shall not be affected by other means of adjustment, the conference agreement makes clear that, when two remedies exist one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies." Conference Report on H.R. 3020, H.R.Rep. No. 510, 80th Cong., 1st Sess. 52, U.S.Code Cong.Serv.1947 p. 1158.

9. "The first one is where occurrences within the six months limitation period in and of themselves may constitute, as a substantive matter, unfair labor practices. There earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the unfair labor practice is not merely "evidentiary," since it does simply lay bare a putative

less of which, if either, is present here, by coupling § 10(b) with the presumption the Labor Board would create an irrebuttable presumption having the substantive law effect that was rejected in *Local Lodge.* Clearly the district court order is not time-barred by § 10(b). *Local Lodge* does not intimate that the Board, even in the "second situation" may vitiate the objectives of finality of judgments and of repose by allowing Unions to relitigate adverse decisions, rather than perfecting appeals. Some of the policies under § 10(b) " . . are to bar litigation over past events 'after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused,' . . ." *Local Lodge* at 419, 80 S.Ct. at 828. Where charges based on a defunct contract are sought to be countered by judicial principles and rebuttal evidence, the Board must do more than seek refuge in the presumption alone.

There does remain the question of what effect the district court judgment has on the presumption itself.[10] To utilize the presumption in the fashion of the Board, giving no consideration to the district court order, makes the presumption of irrebuttable force, not subject to clear, cogent, convincing evidence, *see NLRB v. Local 3, International Brotherhood of Electrical Workers,* 362 F.2d 232 (C.A. 2 1966); *NLRB v. Tragniew,* 185 NLRB 962, 470 F.2d 669, 674 (C.A. 9 1972). Other cases having public policy significance have set out standards for irrebuttable presumptions. In *United States v. Provident Trust Co.,* 291 U.S. 272, 281, 54 S.Ct. 389, 391, 78 L.Ed. 793 (1934), the Court stated:

"The rule in respect to irrebuttable presumptions rests upon grounds of expe-

diency or policy so compelling in character as to override the generally fundamental requirement of our system of law that questions of fact must be resolved according to the proof."

■ The creation of an irrebuttable presumption, hence one of substantive law, was examined by the Supreme Court in *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936), which declared:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress. . . ."

In a similar administrative context, the Supreme Court stated in *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941):

"Congress has entrusted the Board with exclusive authority to determine disputed facts. Under these circumstances we do not feel that petitioner should be foreclosed from all opportunity to offer evidence before the Board on this issue. . . ."

As a statute creating a presumption which operates to deny a fair opportunity to rebut would not afford due process, *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), a Labor Board presumption to the same effect would also suffer shortcomings.

■ In the absence of a valid contract, by virtue of the district court judgment of rescission, repudiation and refusal to negotiate could not constitute unfair labor practices. Thus we decline to enforce the order.

---

current labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice."

**10.** Section 10(b) states that: "Any such proceeding shall, so far as practicable, be conduct-

ed in accordance with the rules of evidence applicable in the district courts . . . ." Rule 301 of the Federal Rules of Evidence declares the effect, in terms of the burden of going forward with evidence to rebut, of a true presumption which is but a way of dealing with evidence, rather than the presumption being evidence in and of itself.

**802**

ANTHONY M. KENNEDY (concurring).

The union did not appeal the district court's judgment under section 301 ordering rescission of the collective bargaining agreement. The validity of a collective bargaining agreement is a question which both the district court and the Labor Board may have concurrent jurisdiction to decide. Here the Board refused to give any weight at all to the district court's decision, claiming that its own determinations always take precedence over inconsistent district court decisions. I believe that facts necessarily decided in either forum should be given at least some collateral estoppel effect in subsequent proceedings in the other forum. Thus I concur in our denial of enforcement of the Board's order.