**LOCAL 32B–32J SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Field Bridge Associates and Rachel Bridge Corporation, Intervenors–Respondents.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

and

**LOCAL 32B–32J Service Employees International Union, AFL–CIO, Intervenor–Petitioner,**

v.

**FIELD BRIDGE ASSOCIATES, Respondent.**

Nos. 24, 81, Dockets 92–4039, 92–4055.

United States Court of Appeals, Second Circuit.

Argued Sept. 1, 1992.

Decided Jan. 7, 1993.

Ira A. Sturm, New York City (Manning, Raab, Dealy & Sturm, of counsel), for Local 32B–32J, Service Employees Intern. Union, AFL–CIO.

Martin Gringer, Garden City, NY (Franklin & Gringer, P.C., of counsel), for Field Bridge Associates and Rachel Bridge Corp.

Michael J. Gan, N.L.R.B., Washington, DC (Jerry M. Hunter, Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel), for N.L.R.B.

Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

In these consolidated appeals, Local 32B–32J, Service Employees International Union, AFL–CIO (Union), petitions for review of an order of the National Labor Relations Board (NLRB or Board), and the Board petitions for enforcement of its order. Field Bridge Associates (Field Bridge) and Rachel Bridge Corporation (Rachel Bridge), employers of workers represented by the Union, have intervened in the former appeal on the side of the Board, and the Union has intervened in the latter on the side of the Board. The principal issue before us is whether the Board was collaterally estopped by state-court rulings, made in the course of actions to stay arbitrations, that these employers had assumed the collective bargaining agreement under which the employers' predecessors and the Union had been operating. We must also decide whether the Board may require clear and convincing evidence of consent before it will find that an employer has assumed a collective bargaining agreement.

We hold that the Board was not collaterally estopped by the state-court rulings and that the Board may use a standard of clear and convincing evidence on the issue of assumption. We deny the Union's petition for review and enforce the Board's order in its entirety.

## I. Background

In late 1986, Field Bridge and Rachel Bridge agreed to purchase two apartment buildings—then known as Ebbets Field Housing Complex (Ebbets Field) and Washbridge Apartments (Washbridge)—from Cedar York Properties Limited Partnership (Cedar York). The closing on the properties took place over a period of days commencing in June 1987. At the time of the purchase, both properties had been managed by Arco Management Corporation (Arco).

At the properties, Arco employed approximately 130 employees, who were members of the Union. Their duties included maintenance, service and security work. Arco had agreed to be bound by the terms of a collective bargaining agreement (the Agreement) between the Realty Advisory Board, a multi-employer association, and the Union.

Field Bridge and Rachel Bridge took over operations of the respective properties on July 1, 1987. Field Bridge immediately terminated Arco as managing agent, and Rachel Bridge did the same one month later. Both new owners, however, retained all of Arco's former employees. After July 1, Field Bridge and Rachel Bridge stopped remitting union dues to the Union, and Field Bridge refused to make contributions to the employee health and pension fund. Rachel Bridge stopped making health and pension contributions one month later.

Several months after the purchase of the two apartment buildings, Field Bridge subcontracted out the security guard work and laid off the Union security guards. Rachel Bridge followed suit in January 1988. The Union responded by striking. The strike at Washbridge lasted only a day, and the strikers returned to work. The strike at Ebbets Field was more protracted, prompting Field Bridge to contract with an outside firm to provide the apartment complex with maintenance and other services. All the strikers at Ebbets Field finally requested to return to work in September 1988, but Field Bridge made offers of reinstatement only to some.

Meanwhile, the Union had sought to add Field Bridge and Rachel Bridge as parties to arbitration proceedings the Union had initiated under the Agreement. These proceedings involved grievances that had originally been brought against Arco. In response to the Union's attempts to join them as parties, Field Bridge and Rachel Bridge each moved in New York State Supreme Court to stay arbitration on the ground that neither was bound by the Agreement.

In April 1988, after a brief hearing at which no witnesses were called, Judge Gammerman of the New York State Supreme Court ruled from the bench, denying Field Bridge's motion and directing it to submit to arbitration. Judge Gammerman observed that the "general indicia in this case as revealed by the papers certainly indicates an assumption of the [collective bargaining] agreement." In November 1988, the Appellate Division affirmed, without opinion. Thereafter, the New York Court of Appeals denied review.

The Union used this judgment to assert collateral estoppel against Rachel Bridge's petition, then before State Supreme Court Judge Moskowitz, to stay the other arbitration proceeding. In November 1988, Judge Moskowitz took note of the Appellate Division's affirmance of Judge Gammerman's ruling and gave it preclusive effect, ordering Rachel Bridge to arbitrate. Because Judge Moskowitz simply relied on Judge Gammerman's prior order, the latter is the critical state-court ruling in this case.

Meanwhile, the Union had filed a series of unfair labor practices charges with the NLRB against Field Bridge in June and November 1988 and against Rachel Bridge in August 1988 and July 1989. In February and August 1989, the Regional Director issued complaints, which were later consolidated. The consolidated complaint alleged that Field Bridge and Rachel Bridge had violated §§ 8(a)(1) and (5) of the National Labor Relations Act, as successor employers, by failing to remit dues and initiation fees to the Union or to make required contributions to the employee health and pension funds. The complaint also alleged that Field Bridge had violated

§§ 8(a)(1) and (3) of the Act by refusing to reinstate strikers who had made uncondtional offers to return to work.

Before the administrative law judge (ALJ), Field Bridge and Rachel Bridge asserted as an affirmative defense that they were not successor employers, had never assumed the Agreement and therefore were not required to remit dues and initiation fees to the Union or to contribute to the health and pension funds. The Union moved to strike this defense, arguing that the state court judgments that the Agreement had been assumed were entitled to preclusive effect. The ALJ rejected this motion. After a hearing, the ALJ reaffirmed his conclusion that neither Field Bridge nor Rachel Bridge had assumed the Agreement and further found that they had not violated the Act by refusing to remit dues and initiation fees to the Union or by failing to make payments to the health and pension funds. The ALJ did, however, find that Field Bridge had violated §§ 8(a)(1) and (3) by refusing to reinstate all strikers who had not already received offers of reemployment, but that neither Field Bridge nor Rachel Bridge had otherwise violated the Act.

The Board adopted the ALJ's recommended order in its entirety. In affirming the ALJ's ruling that there had been no assumption of the Agreement, the Board noted that it required "clear and convincing evidence of consent, either actual or constructive, before [it] will find an assumption of the contract occurred."

## II. The Union's petition

The Union's petition for review raises two major questions. The first is the preclusive effect of the prior state-court orders on the Board's determination of whether Field Bridge and Rachel Bridge had assumed the Agreement. The second is the Board's authority to require clear and convincing evidence before it will find that an employer has assumed a collective bargaining agreement.

### A. *Preclusion*

In the two state-court proceedings, the state judges found, albeit with little discussion or analysis, that Field Bridge and Rachel Bridge had assumed the Agreement. The Union argues that these orders collaterally estopped Field Bridge and Rachel Bridge from relitigating the assumption question.

Citing its decision in *Albritton Communications, Inc.*, 271 NLRB 201, 202 n. 4 (1984), enforced, 766 F.2d 812 (3d Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986), the Board argues that it was not a party to the prior state-court litigation and so cannot be bound by the state court's finding of assumption. More broadly, the Board argues that it is "a public agency asserting public rights" and so "should not be collaterally estopped by the resolution of private claims asserted by private parties." The Board points out that the question of successorship obligations in the labor field has been the subject of several Supreme Court cases. See, e.g., *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987); *NLRB v. Burns Int'l Sec. Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Those decisions, the Board argues, indicate that the issue of successorship, as it affects an unfair labor practice proceeding, should be decided by the Board in the application of federal law and that the Board can never be precluded on successorship issues by state-court findings. The reason is that unfair labor practice proceedings implicate public as well as private interests, and that the Board is the agency that Congress has chosen to resolve the controversy—at least in the first instance.

The Board's arguments gain additional force in the context of this case. The hearings before the ALJ resulted in a record in this court of almost 2,000 pages, which included the testimony of 10 witnesses. The Board's claim, in effect, is that hasty state-court proceedings precipitated by the Union's efforts to join Field Bridge and Rachel Bridge as parties to pending arbitrations and culminating in an oral opinion should not deprive the Board of the power to decide the successorship issue in an unfair labor practice proceeding.

There is substantial force to the Board's argument, but we need not consider it further, since we believe that the Union's collateral estoppel claim fails under general principles of preclusion law, which call for decision here on a much narrower basis. Under those principles, apart from any requirement regarding identity of parties, "the bar of issue preclusion applies only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." In re PCH Assocs., 949 F.2d 585, 593 (2d Cir.1991) (citations omitted).[1]

We think that the first element set forth above—identity of issues—is not satisfied on the facts of this case. The Supreme Court in *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 262–63 n. 9, 94 S.Ct. 2236, 2243–44 n. 9, 41 L.Ed.2d 46 (1974), made it crystal clear that characterizing an employer as a "successor" depends on the context in which the question of the subsequent employer's legal obligations to its predecessor's employees arises.

> [T]he real question in ... "successorship" cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue.... There is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

*Id.* (citations omitted); see also 1 Patrick Hardin, The Developing Labor Law 762 (3d ed. 1992); cf. *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.*, 937 F.2d 729, 734 (2d Cir.1991) ("Issues that may bear the same label are nonetheless not identical if the standards governing them are significantly different.") (citation omitted), cert. denied, —— U.S. ——, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992).

Thus, the Supreme Court has recognized that a subsequent employer may be obligated to arbitrate under its predecessor's collective bargaining agreement but not be otherwise obligated by that agreement. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Court ruled that a subsequent employer was bound by its predecessor's agreement to arbitrate, but left for arbitration the question of what other obligations of the collective bargaining agreement were binding on the subsequent employer. *Id.* at 547–51, 84 S.Ct. at 912–15. This understanding of *Wiley* was made explicit in *Burns*, where the Court said that *Wiley*

> held only that the agreement to arbitrate ... survived the merger and left to the arbitrator, subject to judicial review, the ultimate question of the extent to which, if any, the surviving company was bound by the other provisions of the contract.

*Burns*, 406 U.S. at 286, 92 S.Ct. at 1581; cf. *NLRB v. Babad*, 785 F.2d 46, 49 n. 4 (2d Cir.) (noting distinction between arbitration provision and other provisions of labor contract in situation converse to present case), cert. denied, 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed.2d 61 (1986).

Here, Judge Gammerman in the state court held that Field Bridge assumed the Agreement for the purpose of requiring Field Bridge to arbitrate grievances initially filed by the Union against Arco. Under *Wiley, Burns* and *Howard Johnson*, this holding does not mean that Field Bridge assumed the Agreement in full and is necessarily a successor with respect to legal

---

1. We understand the Union to base its collateral estoppel contention on federal common law principles and on the full faith and credit statute, 28 U.S.C. § 1738. While we note that the Third Circuit has recently held that § 1738 does not apply to the Board, see *NLRB v. Yellow Freight Sys., Inc.*, 930 F.2d 316 (3d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 78, 116 L.Ed.2d

51 (1991), we need not address this question here. As explained in the text, we do not think collateral estoppel applies on the facts of this case because the issue decided by the state courts and the issue decided by the Board were not the same. Consequently, it makes no difference whether federal common law or § 1738 provides the legal basis for the Union's claim.

obligations other than the obligation to arbitrate.

The Union relies heavily on *NLRB v. Donna–Lee Sportswear Co.*, 836 F.2d 31 (1st Cir.1987), and *NLRB v. Heyman*, 541 F.2d 796 (9th Cir.1976), to support its collateral estoppel claim. In *Donna–Lee*, the First Circuit held that the Board was collaterally estopped by a federal district court finding, in a trustee's suit for payment of benefit funds, that no collective bargaining agreement existed between the employer and the union. *Donna–Lee*, 836 F.2d at 33. In *Heyman*, the Ninth Circuit similarly held that the Board was collaterally estopped by a district court order, in a § 301 suit, rescinding a collective bargaining agreement. *Heyman*, 541 F.2d at 798.

However, in both *Donna–Lee* and *Heyman*, it was held that the issue before the federal district court and the issue before the Board were the same. *Donna–Lee*, 836 F.2d at 34 ("No party here can realistically dispute the fact that the issue of contract formation was not identical in both cases."); *Heyman*, 541 F.2d at 800 ("The Board was faced with ... essentially the same contract issue...."). Here, in contrast, the issues of agreement to arbitrate and of assumption of an entire contract are not the same, as the Supreme Court cases cited above make clear. Therefore, we agree with the Board that it was not bound by the prior state-court determinations.

### B. *Standard of Proof*

In affirming the ALJ's decision, the Board observed that it "require[s] clear and convincing evidence of consent, either actual or constructive, before [it] will find that an assumption of the contract occurred." Field Bridge Assocs., 306 NLRB No. 72, at 5; 1991–92 NLRB Dec. (CCH) ¶ 17,118 (Feb. 14, 1992) (citing EG & G Florida, Inc., 279 NLRB 444, 453 (1986); All State Factors, 205 NLRB 1122, 1127 (1973)); accord United States Can Co., 305 NLRB No. 178, at 15; 1991–92 NLRB Dec. (CCH) ¶ 17,063 (Jan. 15, 1992).

The Union argues that the Board cannot impose this requirement. The Union draws our attention to § 10(c) of the National Labor Relations Act, which provides:

> If upon the *preponderance* of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any ... unfair labor practice, then the Board shall state its findings of fact and shall issue ... an order requiring such person to cease and desist from such unfair labor practice.... If upon the *preponderance* of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any ... unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint.

29 U.S.C. § 160(c) (emphasis added). The Union apparently believes that the Board here applied a higher standard of proof—clear and convincing—when it should have applied the lower preponderance standard.

As the Board points out, however, the Union misunderstands what the Board did. The Board did not apply a clear and convincing standard to determine the existence of an unfair labor practice. Rather, it applied the clear and convincing standard to determine whether or not a subsequent employer had consented, either actually or constructively, to assume the collective bargaining obligations of the former employer. It has been held that the Board may require different standards depending on the kind of finding at issue. See *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 707–09, 103 S.Ct. 1467, 1476–77, 75 L.Ed.2d 387 (1983); *Chesapeake & Potomac Tel. Co. v. NLRB*, 687 F.2d 633, 636–37 (2d Cir.1982) (holding that waiver of statutory rights can be effectuated only if "intent to waive is clear and unmistakable from the evidence presented").

"In determining whether an employer has assumed its predecessor's labor contract, the NLRB is not bound by technical rules of contract law ... [and] may adapt those rules to the collective bargaining context." *Babad*, 785 F.2d at 49–50 (citations omitted). The Board's decision to require clear and convincing evidence of consent is one such adaptation. According to the Board, "*Burns* ... counsels utmost restraint in applying an adoption theory."

All State Factors, 205 NLRB 1122, 1127 (1973). The clear and convincing requirement is intended to give effect to this counsel. Moreover, "[t]he Labor Board has expertise in adjudicating successorship issues." *In re Goodman*, 873 F.2d 598, 603 (2d Cir.1989). That expertise entitles a Board finding of successorship to a "high degree of deference." *NLRB v. St. Mary's Foundry Co.*, 860 F.2d 679, 681 (6th Cir. 1988). Such expertise is also entitled to deference when the Board decides, as here, that an employer is *not* a successor. The Board's rule requiring clear and convincing evidence of consent before it will find that an employer assumed the collective bargaining agreement of its predecessor is neither "irrational" nor "inconsistent with the Act." *NLRB v. Financial Inst. Employees*, 475 U.S. 192, 202, 106 S.Ct. 1007, 1011, 89 L.Ed.2d 151 (1986).

We are required to uphold the Board's finding that Field Bridge and Rachel Bridge did not assume the Agreement if that finding is supported by substantial evidence. Cf. *Chesapeake & Potomac Tel. Co.*, 687 F.2d at 637. On our review of the record, we are satisfied that this requirement has been met. We have considered the Union's remaining arguments in support of its claim that Field Bridge and Rachel Bridge were bound by the terms of the Agreement and violated the Act by failing to comply with the Agreement's terms regarding union dues, initiation fees and contributions to the health and pension funds. We find these arguments without merit.

### III. The Board's petition

The Board petitions for enforcement of its order holding that Field Bridge had committed unfair labor practices by "failing to offer reinstatement ... to all of the strikers who had previously offered to return to work," but that neither Field Bridge nor Rachel Bridge had violated the Act "in any other manner."

In reviewing the Board's finding of an unfair labor practice, the "test we apply is ... whether there is substantial evidence on the record as a whole to support the Board's finding." *Abbey's Transp. Services, Inc. v. NLRB*, 837 F.2d 575, 579 (2d Cir.1988) (citations omitted). Our review of the record indicates that the Board's order in this respect is supported by "substantial evidence." We have also considered Field Bridge's remaining arguments against the Board's order, and we find them without merit. For the reasons set forth above, the Board's order is enforced in its entirety.