**FARINA BROTHERS COMPANY, Inc.,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA CARPENTERS LOCAL, NO. 107.**

Civ. A. No. 56–614–A.

United States District Court
D. Massachusetts.

May 15, 1957.

Edward U. Lee, Boston, Mass., for plaintiff.

Saul A. Seder, Worcester, Mass., for defendant.

ALDRICH, District Judge.

Defendant's motion to dismiss the substitute complaint raises a single question. Defendant, a labor union representing employees in an industry affecting commerce, is alleged to have called a strike of its members employed by the plaintiff in violation of a contract between the plaintiff and itself. A copy of the contract is attached to the complaint as Exhibit A, and it being apparent that its name is not mentioned, plaintiff makes a number of subsidiary allegations in support of its statement that it is a party. The union moves to dismiss on ground that plaintiff is not a party.

Exhibit A was initially an agreement entered into between Worcester General Builders Association, hereinafter called Association, and the union. In a number of instances, particularly with relation to wage scales, etc., the language of the agreement indicates that there were but two parties—Association and the union. However, there are some conspicious exceptions. Thus Article I, in listing the Objects, includes "peaceable adjustment * * * of * * * differences that may arise between any of the parties to this agreement." Article IV, No. 2,

reads, "Each employer agrees to pay eight (8) cents per hour, for each hour worked, by each of his Carpenters * * *" Article IX reads in part, "The employers agree that in the employment of workmen * * *" (there shall be preferential shop). The document continues, under date of May 9, 1956, with the following: "Signed for the Associated General Contractors of Massachusetts, whose members hereby become a party to the agreement negotiated between Worcester General Building Contractors Association and Carpenters Local Union No. 107, the latter two groups being the negotiating committees." There is appended signatures for Associated General Contractors of Massachusetts, Inc., hereinafter called Associated, and the union.

The complaint alleges that the plaintiff, since some time prior to May 9, 1956, has constantly been "a member of and associated with" Associated, and that on May 9, 1956, acting by and through Associated it entered into a collective bargaining agreement with the defendant (Exhibit A); that the defendant at all times knew the plaintiff was a member of Associated and had dealings and negotiations with the plaintiff with respect to and for the aforesaid bargaining agreement, but on June 22, 1956 it called a strike of, and caused a stoppage of work by, all union members employed by plaintiff who were covered by and subject to the terms of the said agreement. The complaint seeks damages under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

The union contends that the aforesaid allegations that plaintiff was a party to the agreement are conclusions of law contrary to its terms; that the agreement shows that the sole parties were Association (perhaps), Associated and itself, and that if plaintiff is an undisclosed principal, "quaere as to whether such an activity, on the part of an employer, could possibly have been intended, not alone tolerated, as a procedure between management and labor, [or] * * * was it intended that undisclosed principals were entitled to the use of this procedure?"

I discard any question of undisclosed principals. If an individual employer, as a matter of construction, could be an individual party to this agreement, the complaint adequately alleges disclosure. The real question is whether an individual employer, for whom there has been joint bargaining authorized, and an over-all agreement, is to be regarded as "an employer" who can sue under § 301(a), which permits "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * without respect to the amount in controversy or without regard to the citizenship of the parties."

It is to be noted that the strike is not against all members of Associated, but only against the plaintiff. Nor is it alleged to be a whipsaw device aimed indirectly at other members. Cf. National Labor Relations Board v. Truck Drivers Union, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed. 2d 676.

The union asserts that to permit the present suit would be to "open the doors of the federal courts to a potential flood of grievances * * * relating to * * * terms peculiar to the individual benefit." This unidentified quotation comes apparently from Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 460, 75 S.Ct. 488, 99 L.Ed. 510. I believe it to be quite out of context. The plaintiff admits, as it must, International Brotherhood of Teamsters, etc. v. W. L. Mead, Inc., 1 Cir., 230 F.2d 576, that an individual employer could sue if it had an individual contract.[1] The only question here is whether plaintiff has an individual contract, or, even if in some sense it has, it has disabled itself from suing because the agreement was jointly made.

---

1. It even admitted, in oral argument, that plaintiff could sue if it had itself signed the instant agreement. Since this is a jurisdictional matter I doubt the value of such admission.

Defendant refers to the fact that an individual employee member of a union may not sue under § 301. Both as a matter of statutory interpretation and legislative history, I fail to see the force of the analogy. In the ordinary course it is intended that an employer may sue. Where a number of employers in association and the union have bargained jointly, it must be apparent that the employer association is strictly not an "employer" at all. The association may have, at most, a few skeleton employees. It is not for them that it bargained. The terms of the agreement above quoted make clear that each member of Associated was regarded a separate employer. If any one is unable to sue I think it more possibly Associated.

The union argues that its individual employees cannot sue under the Act, and that since one of its intents is mutuality, individual members of an association of employers should be ruled to be equally disabled. This overlooks substantial differences between individual employers and individual employees. Normally individual employers may sue. Nor should it be said that they must sacrifice that right because the Board has certified[2] that they may bargain collectively. A suit which could assert only a joint injury to all of the employers would be of very limited utility. If the situation were reversed, could it be thought that the union, by bargaining collectively with a so-called multi-employer (an inaccurate, and correspondingly confusing term, the correct term being multi-employer association), surrendered its right to sue an individual employer for an improper lock-out not participated in by the others? Cf. Rabouin v. National Labor Relations Board, 2 Cir., 195 F.2d 906.[3] I believe there were here, in effect, several contracts, whether the individual employers signed or not, and that no disability resulted from the manner they were arrived at. The motion to dismiss is denied.

**2.** Although Section 9(b) (c) of the National Labor Relations Act, 29 U.S.C.A. § 159(b, c) does not expressly provide for Board certification of an employer association, the Supreme Court has approved the Board policy of recognizing such multi-employer associations as the appropriate bargaining unit in union certification proceedings under that section. See National Labor Relations Board v. Truck Drivers Union, 353 U.S. 87, 96, 77 S.Ct. 643, 1 L.Ed.2d 676. A finding by the Board that an employer association is the appropriate bargaining unit is conclusive on the parties and the labor representative is obligated to bargain collectively with that unit, Douds v. International Longshoremen's Ass'n, 2 Cir., 241 F.2d 278, Madden v. International Union, U.M.W., D.C.D.C., 79 F. Supp. 616, although the union's duty may not be as extensive as the duty of the employer to bargain with the designated labor unit. See Morand Bros. Beverage Co., 91 N.L.R.B. 409, affirmed in part and reversed in part, Morand Bros. Beverage Co. v. National Labor Relations Board, 7 Cir., 190 F.2d 576.

**3.** The court in Ketcher v. Sheet Metal Workers' International Ass'n, D.C.E.D. Ark., 115 F.Supp. 802, sought to distinguish Rabouin. I am unable to agree. Its position that the individual employer became a party to the contract by estoppel, and that "jurisdiction cannot be conferred * * * by estoppel," would appear to confound so-called estoppel to contest jurisdiction and conduct which amounts to the adoption of a contract. Where jurisdiction depends upon contract, the manner one became a party thereto is solely a question of contract law, and a full step removed from a jurisdictional matter.