Joseph O'HARE, Albert M. Cornette, Peter Gale, Bruce A. McAllister, Robert W. Sanders and Thomas E. Moran, as Trustees of the New York Marine Towing and Transportation Industry Pension Fund and Insurance Fund, Plaintiffs,

v.

GENERAL MARINE TRANSPORT CORPORATION, Defendant.

BERMAN ENTERPRISES, INC., Standard Tank Cleaning Corp., and General Marine Transport Corp., Plaintiffs,

v.

LOCAL 333, UNITED MARINE DIVISION, ILA, et al., Defendants.

No. 78 Civ. 6277 (RWS).

United States District Court, S. D. New York.

Dec. 4, 1981.

Beck, Halberg & Williamson, Waldman & Waldman, New York City, for plaintiffs; Roman Beck, Seymour M. Waldman, New York City, of counsel.

Jared Stamell, Clifton, Budd, Burke & DeMaria, New York City, for defendant; Kevin J. McGill, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff trustees of the New York Marine Towing and Transportation Industry Pension Fund and Insurance Fund ("the Trustees" or "the Funds") are seeking a partial summary judgment against defendant General Marine Transport Corporation ("General Marine") on the issue of liability for contributions allegedly due the Funds pursuant to a collective bargaining agreement between Local 333, United Marine Division, International Longshoreman's Association, AFL–CIO ("Local 333"), and the Marine Towing and Transportation Employers' Association ("the Association"), an association representing companies in the multi-employer bargaining unit of which General Marine is alleged to be a member. General Marine has also moved for summary judgment and seeks dismissal of the complaint. For the reasons stated below,

which constitute the findings of fact and conclusions of law, the motion of the Trustees will be granted, and the motion of General Marine will be denied.

Certain issues involving these, or related parties, have been the subject of extensive litigation before the Second Circuit, the NLRB, and this court. Familiarity with *General Marine Transport Corp. v. NLRB*, 619 F.2d 180 (2d Cir. 1980), *Berman Enterprises, Inc. v. Local 333, United Marine Division, International Longshoreman's Assoc.*, 644 F.2d 930 (2d Cir. 1981) and their underlying facts is assumed. The undisputed facts set forth by both the Trustees and General Marine with respect to the instant motion are briefly set forth below.

General Marine is a wholly owned subsidiary of a holding company owned by various members of the Berman family. It operates sludge vessels used for dumping sewage sludge out at sea. From 1973 through 1976 General Marine, as a member of the Association, was a party to a collective bargaining agreement with Local 333. Shortly before the agreement expired, General Marine completed an authorization form authorizing the Association to negotiate on its behalf. During the negotiations the question of resignation by General Marine from the Association arose, as well as a proposed contract provision binding General Marine and its "affiliates." General Marine was given the opportunity to resign from the Association, but refused to do so. On March 26, 1976, the Association and Local 333 executed a new three-year collective bargaining agreement ("the contract"). Although substantially renewing the basic provisions of the prior agreement, it purported to cover all employers as well as a "subsidiary company, an affiliated company or a company division in the Port of New York and vicinity."

On April 13, 1976 Peter Frank, Vice President of General Marine ("Frank") wrote to Local 333 stating the refusal of General Marine to be bound by the contract, claiming that its scope exceeded the Association's authority. Between April and August, 1976, Local 333 filed several unfair labor practice charges with the Board against General Marine and Berman. The first complaint was denied by the Board. In the second complaint, Berman and the Board agreed in a settlement that Berman would not recognize the Marine Engineers' Beneficial Association ("MEBA") until representation proceedings were completed. The third charge was withdrawn by Local 333 in light of the representation proceedings. On December 10, 1976 in the representation proceedings the Regional Director determined that General Marine was bound by the contract and therefore barred from having election proceedings and that Berman and its other affiliates should have elections to determine the proper bargaining agent. Local 333 alone requested review of this decision which was denied by the Board. After an election MEBA was certified as the bargaining agent for ships owned by Berman and its affiliates other than the two ships operated by General Marine, the Susan Frank and the Rebecca K.

Between January and March, 1977, with the representation question settled, Local 333 demanded that General Marine honor the terms of the contract. On February 28, 1977, Local 333 filed an unfair labor practice charge with the Board. The Administration Law Judge ("ALJ"), relying on the report from the representation proceedings pursuant to § 102.67(f) of the Board's Rules and Regulations, found that General Marine was bound by the contract and had committed an unfair labor practice. The Board affirmed the decision on October 24, 1978. The Second Circuit set aside the Board's decision holding that the unfair labor practice was time-barred by the six-month filing provision of § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). *General Marine Transport Corp. v. NLRB*, 619 F.2d 180 (2d Cir. 1980).

After the April 13, 1976 notice of termination by General Marine, referred to above, the members of Local 333 struck the two General Marine barges for two days on April 28, 1976. General Marine contends that the strike was a response to implementation of the wage rates under the new

contract. The Trustees asserted that the strike was due to unauthorized manning changes on the vessels. Frank, by letter dated April 30, 1981, claimed that, because of the strike, General Marine would no longer be bound by the contract pursuant to Article I, Section 8 of the contract which provides in part that "[u]pon the violation of this [no strike] Section by the Union or any of the Employees, this Agreement may be terminated with respect to and by all and any of the Employers." The strike ended that day after discussions between Frank and union representatives. The Trustees contend that the termination was rescinded, and General Marine contends that the termination remained in effect with Local 333 agreeing to work' under the emergency health situation then existing. There is a factual issue therefore as to the basis of the strike and its resolution.

This action by the Trustees seeking recovery of pension fund contributions under the contract initially was brought as a counterclaim in the anti-trust case brought by Berman against Local 333 and the Association, referred to earlier. After the Trustees were dropped as defendants in that action, the counterclaim was severed from the anti-trust suit and asserted through an independent complaint. It is the only contract violation presently being asserted against General Marine that is before the court.

Jurisdiction for this action is properly predicated on § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq; see Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); *American Ben. Plan Admin., Inc. v. D & E Corp.*, 90 CCH Labor Cases ¶ 12,428 (C.D.Cal.1980); *Hann v. Harlow*, 271 F.Supp. 674 (D.Or.1967).

Although the facts that give rise to a § 301 claim may well have been actionable ·as an unfair labor practice within the proper jurisdiction of the National Labor Relations Board ("NLRB"), § 8 of the National Labor Relations Act ("NLRA") 28 U.S.C. § 158, the board's jurisdiction is not exclusive:

> The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and it does not destroy the jurisdiction of the court under § 301.

*Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *see also Amalgamated Ass'n of Street, Electric Railway, & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 277–301, 91 S.Ct. 1909, 1913–1925, 29 L.Ed.2d 473 (1971); *Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487, 490 (9th Cir. 1980). Therefore this court properly has jurisdiction over this action.[1]

■ In *General Marine Transport Corp. v. NLRB*, 619 F.2d 180, the Second Circuit determined that Local 333's unfair labor practice charge brought by the board against General Marine was time-barred by the six-month filing provision of § 10(b) of the NLRA, 29 U.S.C. § 160(b). Thus the court granted General Marine's petition to set aside an NLRB order in favor of Local 333. This decision does not present a res judicata bar to this case nor collaterally estop the determination of the issues relevant to this case since the causes of action differ and the issues relevant to the instant action were not necessarily previously determined.

The judicially developed doctrine of res judicata evolved primarily to avoid repeti-

---

1. *Wm. Chalson & Co. v. Amalgamated Jewelry, Diamond & Watchcase Workers Union*, 478 F.Supp. 1103, 1108 (S.D.N.Y.1979), does not suggest that the court lacks jurisdiction. There the court refused to compel an employer to arbitrate under a collective bargaining agreement reached after his withdrawal from the industry bargaining association despite the claim of an unfair labor practice resulting from

such withdrawal. Despite its unwillingness to enforce the contract, the association's agency having been terminated, the court deferred to a pending NLRB unfair labor practice proceeding to determine the validity of the contract and the effect of the withdrawal. The court did not hold that it lacked jurisdiction to consider the validity of the contract.

tious litigation of the same causes of action. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1933). Through its operation parties to an action or their privies are barred from relitigating a cause of action where a judgment on the merits has already been rendered, *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 601, 71 L.Ed. 1069 (1927), and there is an identity of parties and issues between the two actions. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir., cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). The doctrine of collateral estoppel renders a prior judgment conclusive as to matters necessarily determined and litigated in the prior action. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. at 597–98, 68 S.Ct. at 719; *Expert Electric, Inc. v. Levine*, 554 F.2d at 1233.

A "cause of action" for res judicata purposes "is not a matter of precision nor subject to the application of any mechanical formula." *Id.* at 1234. The facts surrounding the transaction or occurrence, rather than the legal theory upon which a litigant relies, is generally stated to constitute the cause of action and entails considering whether the rights determined in the prior action would be impaired by the subsequent action. *Id.; Moreno v. Marbil Productions, Inc.*, 296 F.2d 543, 545 (2d Cir. 1961).

Here although the legal theory for this action differs from the NLRB cause, both arose from the same core of operative facts and the prior action charging an unfair labor practice sought compliance with the contract which would have resulted in the payment of the amount claimed to be due in the current action. Since a ruling based on a statute of limitation is generally deemed a decision on the merits, *Mathis v. Laird*, 457 F.2d 926, 927 (5th Cir.), cert. denied, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972), *National Ben. Fund for Hospital & Health Care Employees v. Presbyterian Hospital in New York, Inc.*, 448 F.Supp. 136, 138 (S.D.N.Y.1978), the instant action may initially appear to be barred by the Court of Appeals decision in 1980.

Under the circumstances of this type of action, however, res judicata should not apply both as a matter of equity and law. As noted above, the NLRB and the district court have concurrent jurisdiction over two actions arising from the same set of facts and circumstances when the two claims asserted are for an unfair labor practice and for breach of a collective bargaining agreement. *Smith v. Evening News Ass'n*, 371 U.S. at 197, 83 S.Ct. at 268. Since jurisdiction for a § 301 claim for the funds to be paid under the contract is vested in the district court and not in the NLRB, a § 301 action could not have been brought in the prior proceeding before the NLRB. The present claim for relief sought, the payment of funds due under the agreement based on a breach of contract, though stemming from a common nucleus of facts, should not be barred by res judicata if it never could have been achieved in the prior proceeding. The issues are thus not identical and neither are the parties.

■ Thus the pertinent inquiry addresses the collateral estoppel effect that results from the Second Circuit's decision after the NLRB proceeding. The issues of the validity, repudiation and breach of the contract were not addressed in the prior action by the Circuit Court. The Second Circuit's decision considered the date of the repudiation and whether a continuing repudiation could be considered a continuing unfair labor practice starting the six-month NLRB limitation period anew. 619 F.2d at 186–87; *see Local Lodge 1424 International Assoc. of Machinists v. NLRB*, 362 U.S. 411, 422, 80 S.Ct. 822, 829, 4 L.Ed.2d 832 (1960). The repudiation occurred on April 13, 1976, no subsequent actions were found to estop General Marine from asserting the statute of limitations defense, and the continuing violation theory was rejected. *General Marine Transport Corp. v. NLRB*, 619 F.2d at 188. The validity of the contract and the effect of repudiation were not considered. Although these issues were litigated, their resolution was not necessary to the determination of the prior action by the Second Circuit, hence no collateral estoppel. *Com-*

*missioner of Internal Revenue v. Sunnen,* 333 U.S. at 597–98, 68 S.Ct. at 719.

Furthermore, the rights established in the Second Circuit's decision will not be impaired by this holding. Since the unfair labor practice charge was dismissed on statute of limitations grounds, resort to the administrative procedures of the NLRB, and a hearing before an administrative law judge to redress an unfair labor practice was precluded by the delay in filing. Section 10(b) addresses the administrative remedies provided by Congress to resolve unfair labor practices, *cf. United Parcel Services, Inc. v. Mitchell,* 451 U.S. 56, 68 n.4, 101 S.Ct. 1559, 1567 n.4, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), while the definition of unfair labor practices is contained in another section. These administrative remedies do not address the availability of money damages as relief before a district court based on a breach of contract. Moreover, the NLRB's jurisdiction over unfair labor practices does not preclude a district court from exercising jurisdiction over an action "even where such award presents a potential conflict with an NLRB decision." *Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.,* 639 F.2d at 490. The district court properly retains jurisdiction to the extent the § 301 action is governed by the collective bargaining agreement. *Motor Coach Employees v. Lockridge,* 403 U.S. at 300–01, 91 S.Ct. at 1924–25; *Waggoner v. R. McGray, Inc.,* 607 F.2d 1229, 1234–35 (9th Cir. 1979).

■ In addition the initiation of the unfair labor practice claim by the union before the NLRB did not constitute a waiver of § 301 claims by the trustee in the district court. Before the NLRB Local 333 sought to redress an unfair labor practice claiming that General Marine breached the contract. In the instant action the trustees seek to recover for payments allegedly due based on the contract. Both claims have independent and concurrent sources of jurisdiction and could not have been asserted in the same forum. The assertion of one by the union does not bar assertion of the other by the trustees. *National Benefit Fund for Hospital & Health Care Employees v. Presbyterian Hospital,* 448 F.Supp. 136, is not to the contrary. In *National Benefit,* the plaintiff Fund, although not required to, agreed to submit a dispute to arbitration where it was determined that the claim was barred by laches. The Fund then sought to assert a claim again based on the collective bargaining agreement in district court under ERISA. The court held that res judicata from the arbitration award barred the district court action. In that case the parties voluntarily submitted the dispute to arbitration for resolution, and then the losing party sought to assert the same basis for recovery in the district court as had been asserted in the arbitration proceeding. In the instant case, although both actions ultimately could turn on the validity of the collective bargaining agreement, independent and concurrent sources of jurisdiction are asserted as the basis for recovery.

■ Since the prior and the instant claims are separate causes of action, they invoke separate and distinct statutes of limitations. As discussed and applied by the Second Circuit, the statute of limitations applicable to an unfair labor practice charge before the NLRB is six months. 29 U.S.C. § 160(b). Under § 301 the applicable statute of limitations is generally that of the state in which the cause of action arose with due regard for the federal policies involved. *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 705–07, 86 S.Ct. 1107, 1113–14, 16 L.Ed.2d 192 (1966); *cf. United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 60 & n.2, 65–71, 101 S.Ct. at 1562 & n.2, 1565–1568 (Stewart, J., concurring). The appropriate statute of limitations period for breach of contract actions in New York is six years and is applicable to the instant action. N.Y.Civ.Prac.Law and Rules § 213(2); *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1252–53 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *see also Savoretti v. Hotel & Restaurant Employees & Bartenders International Union Pension Fund,* 470 F.Supp.

**126**

1286, 1289 (S.D.N.Y.1979). Nor has the defendant submitted or this court found another New York statute of limitations that would be more appropriate. *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Thus this § 301 action is timely filed, properly before this court and not barred or decided by res judicata or collateral estoppel.

■ The final asserted jurisdictional defect, that this action should be dismissed because of a failure to pursue arbitration procedures, *see United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), is also without merit. The duty of a party to arbitrate before pursuing judicial proceedings is to be resolved by analysis of the collective bargaining agreement as it applies to the pension funds in accordance with applicable substantive federal law. *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80*, 605 F.2d 1290, 1294 (2d Cir. 1979); *Moruzzi v. Dynamics Corp. of America*, 443 F.Supp. 332, 333 (S.D.N.Y.1977). Such analysis is properly before the court. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). Although in construing an arbitration clause, the duty to arbitrate is generally favored, *United Steelworkers of America v. Warrior & Gulf Navigation*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d

1409 (1960), none the less the duty must be enunciated in the contract. *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). In the instant case the Funds were only beneficiaries and not parties to the collective bargaining agreement and indeed are independent of Local 333. The general arbitration provision in Article II of the collective bargaining agreement does not explicitly or implicitly apply to the Trustees. It explicitly refers to claims brought by an employer, the union or the association and provides for the proper procedures for initiating arbitration. Since the Funds are otherwise mentioned in regard to arbitration, their exclusion from the general provision combined with the specific mention of other parties indicates that the section is inapplicable to the Funds without reference to another section of the collective bargaining agreement. General Marine has not argued to the contrary.

Article I, Section 16(d) of the contract deals with employer delinquencies in insurance and pension payments.[2] This provision refers to the union's right to strike a delinquent employer without violating the "No Strike" clause of the contract. The section also specifically refers to the Trustees' right to recover legal fees incurred in enforcing payment under the contract. One exception to the right to strike occurs when the employer 'questions' the amount due, in which case a bond shall be posted, and the dispute shall be resolved through arbitration. Resort to arbitration occurs when the amount due is questioned. In this case liability itself is contested, which is

**2.** Section 16(d) of the contract provides in pertinent part:

Nothing contained herein, however, shall prevent the Union from immediately striking the said delinquent Employer until all monies owed hereunder by the delinquent Employer are paid ... and if the Trustees incur legal expense in enforcing payment of such delinquent amount, the Trustees shall also be entitled to recover their reasonable counsel fees and other expense incurred in effecting collection. Such strike shall not violate the "no strike clause" and shall not be subject to the grievance and arbitration machinery of this contract.

In the event that the amount of delinquency alleged to be due by the Funds' Administrator is questioned by the Employer, the Employer may post a surety company bond in a form satisfactory to the Administrator or in lieu thereof, a cash deposit, for the amount certified by the Administrator of the Funds, in which event the Union shall not strike the delinquent Employer before the date of termination set forth in the aforesaid notice and the amount in dispute shall be resolved in accordance with the grievance and arbitration machinery of this contract.

clearly beyond the scope of this narrow duty of the Trustees to arbitrate, particularly in light of the fact that the Trustees were not signatories to the collective bargaining agreement. *See Lewis v. Benedict Coal Corp.*, 361 U.S. at 468–70, 80 S.Ct. at 494–95; *Todd v. Casemakers, Inc.*, 425 F.Supp. 1375, 1378 (N.D.Ill.1977); *Wishnick v. One Stop Food & Liquor Store, Inc.*, 359 F.Supp. 239, 242–43 (N.D.Ill.1973). Under the circumstances of this case and the terms of the collective bargaining agreement there was no duty to arbitrate on the part of the Trustees, and therefore no jurisdictional defect for their failure to do so.

■ Next General Marine contends that it is not bound by the agreement because it purported to bind all affiliates of General Marine, and therefore under traditional agency law the contract was beyond the scope of the Association's authority. *Scientific Holding Co. v. Plessey, Inc.*, 510 F.2d 15 (2d Cir. 1974). Although the contract did purport to bind General Marine's affiliates, these actions do not indicate that the Association exceeded its authority as to General Marine. The only parties that can contest their inclusion in the agreement on that basis are the affiliates of General Marine since the Association never had any authority to bargain on the affiliates behalf. Indeed, as a result of the representation proceedings elections were held and another union was established as the proper bargaining agent for workers aboard the affiliates' vessels. However, this in no way affected the ability of the Association to bargain on behalf of General Marine, a separate entity, as the Association properly did. Therefore, the April 13 repudiation was an ineffective termination of the agreement for collective bargaining purposes and General Marine, as of that point, remained bound by the agreement. In the instant action General Marine was well aware of the Association's intention to include the "affiliates' clause" in the agreement, and was given ample opportunity to withdraw from the Association prior to completion of the collective bargaining agreement but expressly refused to do so. The April 13 Frank letter after the contract

had been agreed upon, was untimely and also ineffective under federal labor law and policies.

In construing collective bargaining agreements, it has been established that § 301 of the LMRA is more than a jurisdictional statute, and "authorized federal courts to fashion a body of federal laws for the enforcement of these collective bargaining agreements." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972; *Smith v. Evening News Ass'n*, 371 U.S. at 199, 83 S.Ct. at 269. The substantive law to be applied under § 301 is federal which must be fashioned from the policy of the national labor laws. *Textile Workers Union v. Lincoln Mills*, 353 U.S. at 456, 77 S.Ct. at 917.

Here, General Marine's claims conflict with the rule that absent an impass in negotiations or unusual circumstances, an employer may not unilaterally withdraw from a multiple employer bargaining agreement after negotiations have commenced for to do so would be an unfair labor practice. *NLRB v. Paskesz*, 405 F.2d 1201, 1202 (2d Cir. 1969); *NLRB v. Sheridan Creations, Inc.*, 357 F.2d 245 (2d Cir. 1966), *cert. denied*, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967). *Paul v. Lindgren*, 375 F.Supp. 843, 851 (N.D.Ill.1974).

General Marine further contends that the contract was not in effect after the repudiation of the contract on April 30, 1976 pursuant to its terms as a consequence of the April 28, 1976 strike of Local 333 members and that it had not received the benefit of the contract.

The Trustees assert that General Marine breached the collective bargaining agreement by failing to make the payments required under the contract. General Marine does not deny failing to make the payments but instead contends that there are material issues of disputed fact which indicate that the contract may indeed be invalid and unenforceable. The Trustees claim that the strike was in response to unilateral manning changes on the sludge vessels made by General Marine, but that Frank and Union

representatives agreed that the contract would remain in effect, that manning changes would be made only after consultation among the parties, and that the termination letter was to be deemed rescinded. General Marine claims that the strike resulted from the payment of wages specified as in the contract and denies an agreement to consult before manning changes were made or to terminate the rescission and claims that the agreement was only to get the workers back on the job to remedy the emergency health situation. Despite these issues relating to the motivation for the strike and the reason for its termination, there remain no issues of material fact necessary to the resolution here.

■ For the purposes of this motion it will be assumed that the April 30, 1976 termination was not rescinded. Notwithstanding, it was not effective. In *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1959), the Supreme Court addressed the independent nature of labor union welfare funds, and the inability of an employer to assert a unions' breach of the collective bargaining agreement as a defense to payment due to funds. After indicating that a funds' rights under a collective bargaining agreement were not typical third party beneficiary rights, the court found as a matter of substantive federal labor law that the parties to the contract must unequivocally express an agreement that a union's breaches of the agreement will give rise to a defense to the employer's duty to contribute to the Trustees. This was based on the fact that the Trustees are independent of the union and serve beneficiaries who are not necessarily still members of the union and was thus held to promote national labor policies. Thus the union's wrongful action should not be held against the beneficiaries of the trust. Thus the court denied a defense or set-off to payments due under the contract based on the union's breach of the contract. Similarly in the instant action General Marine's right to terminate the agreement for an unauthorized strike does not specifically mention the trustees as subject to the right of termination. In this case, as there were Local 333 members continuing to work on General Marine's barges, the trustees' rights to funds for these employees should not be divested by a termination as a matter of federal law under § 301.

■ Denying the Trustees' claims would have the effect of condoning action thus prohibited by Section 8(d) of the NLRA, the termination of the contract without including adequate notice, offers to meet and confer with the opposition as well as compliance with other provisions and be in direct conflict with national labor law and policy. Although the collective bargaining agreement may indicate that the employer has the authority to terminate the agreement if the conditions were as asserted by General Marine, the effect of such termination should be construed in light of the national labor policy and law with which General Marine was quite familiar. 29 U.S.C. § 158(d). As the First Circuit stated:

> If the continued validity of a collective bargaining agreement which is the subject of suit under § 301 depends on the effectiveness of a notice of termination, this must be determined by the federal court upon an application of the rules laid down in § 8(d) of the act . . .

*International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers, Local Union No. 25 v. W. L. Mead, Inc.*, 230 F.2d 576, 582 (1st Cir.), *cert. dismissed*, 352 U.S. 802, 77 S.Ct. 21, 1 L.Ed.2d 37 (1956). Concededly, none of these measures has been complied with and therefore the purported repudiation was ineffectively made under provisions of the national labor law as formulated in the NLRA whether or not the union's two-day strike also violated the appropriate termination procedures. *General Marine Transportation Corp. & United Marine Division, Local 333*, 228 NLRB No. 128 (1977). Therefore, given the independent status of the Trustees and General Marine's failure to abide by lawful termination procedures, the termination by the company as to the working Local 333 members was not effective.

Although some of the factors discussed in the preceding analysis entail consideration of unfair labor practices as they relate to defenses to enforcement of a collective bargaining agreement, such factors are not beyond the scope of this court's review and can be considered in determining federal law and whether a contract is valid and in effect because such provisions are clear statements of the national labor policy. In *Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers, Local 39*, 344 F.2d 107 (2d Cir. 1965), although it denied recovery, a district court was found to have properly considered an action seeking a declaratory judgment that a clause of a collective bargaining agreement was unenforceable based on an unfair labor practice under § 8(e) of the NLRA, 29 U.S.C. § 158(e). *See also International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers, Local Union No. 25 v. W. L. Mead, Inc.*, 230 F.2d at 582; In *Paul v. Lindgren*, 375 F.Supp. at 851, an untimely withdrawal from a multiple employer agreement was analyzed under the rule stated in *NLRB v. Paskesz*, 2 Cir., 405 F.2d 1201, and *NLRB v. Sheridan Creations*, 2 Cir., 357 F.2d 245. Also in an analogous situation the court held in *Perma-Line Corp. v. Sign Pictorial & Display Union, Local 230*, 639 F.2d 890, 894–95 (2d Cir. 1981), that a provision of collective bargaining agreement that violated unfair labor practice sections of federal labor laws, §§ 8(a)(3) and (b)(2) of the NLRA 29 U.S.C. §§ 158(a)(3) and (b)(2), is void and unenforceable and cannot be the basis for an arbitration award. Thus, these policies and considerations are properly before the court in determining the relevant federal law.

Based on the foregoing discussion, General Marine has raised no genuine issue of material fact challenging the validity of the collective bargaining agreement or sufficiently establishing a valid termination. Since the payments were due under the collective bargaining agreement but have not been made, and General Marine has raised no genuine issue as to a defense, General Marine has breached the agreement as to the Trustees. Consequently General Marine's motion for summary judgment is denied, and the Trustee's motion for partial summary judgment on the issue of liability for any payments proven to be due is granted. Final judgment will be entered upon a determination of the amount of the Trustees' claim following a hearing to be scheduled within ten (10) days in the event that the parties cannot reach agreement on the amounts involved.

IT IS SO ORDERED.